OPINION
{¶ 1} Plaintiffs-appellants, John A. Mackie, II, a minor, by and through his next friend and natural guardian John A. Mackie, Joyce Mackie, and John A. Mackie appeal the October 22, 2002 judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, American Casualty Insurance Company ("American Casualty"), Continental Insurance Company ("Continental"), and Valley Forge Insurance Company ("Valley Forge") (case No. 02APE11-1306). Appellants also appeal from the October 22, 2002 judgment granting summary judgment to defendants-appellees, Continental, and Havican Insurance Company ("Havican") (case No. 01APE11-1305). The appeals were consolidated by order of this court on December 6, 2002. For the reasons that follow, we affirm.
{¶ 2} This underinsured motorist coverage case arises out of a motor vehicle collision that occurred on January 21, 1991. John A. Mackie, II, who was six-years-old at the time, was a passenger in a vehicle owned by his grandmother, Joyce Mackie, and driven by his grandfather, John A. Mackie. John A. Mackie, II, lived with his grandparents at the time of the accident, and his grandparents later formally adopted him on March 17, 1992.
{¶ 3} John A. Mackie, II, sustained a severe brain injury as a result of the accident. The accident was allegedly caused by the negligence of Steve M. McCullum. On June 1, 2001, appellants released Steve M. McCullum for the $100,000 limits of his liability policy issued by State Farm Insurance Company.
{¶ 4} After the Ohio Supreme Court decidedScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541, and Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557, appellants sought coverage for their bodily injury and consortium claims arising out of the 1991 accident under policies of insurance issued to Joyce Mackie's employer, Mount Carmel Health, an affiliate of Holy Cross Shared Services, Inc., and John A. Mackie's employer, MP Construction Co., Inc. On April 26, 2000, counsel for appellants wrote to the Risk Management Department at Mount Carmel East Hospital where Joyce Mackie was employed as a cardiovascular technician, and notified the hospital that appellants would be seeking underinsured motorist coverage through insurance policies issued to Mount Carmel East Hospital. On December 13, 2000, appellants filed a "Complaint for Discovery" in case No. 00CVC-12-11014 in the Franklin County Court of Common Pleas. After appellants ascertained the identities of the various insurers through the discovery action, they filed the instant declaratory judgment action against those insurers.
{¶ 5} There are four policies issued to Joyce Mackie's employer, Mount Carmel Health: (1) Continental Insurance Company Business Auto Policy with limits of $1 million per accident or loss; (2) Continental Insurance Company Commercial General Liability Policy with a $1 million personal injury limit; (3) Continental Insurance Company Multi-Cover Catastrophe Liability Policy with limits of $10 million per occurrence; and (4) Havican Insurance Company Excess Liability Policy with limits of $25 million per occurrence.
{¶ 6} With respect to John Mackie's employer, MP Construction Company, Inc., there are three policies at issue: (1) American Casualty Company of Reading, PA Business Auto Policy, with uninsured/underinsured ("UM/UIM") limits of $1 million; (2) Valley Forge Insurance Company Commercial General Liability Policy with liability limits of $1 million; and (3) Continental Casualty Company Commercial Umbrella Policy with a liability limit of $2 million.
{¶ 7} Appellees moved for summary judgment, as did appellants, on a variety of grounds. The trial court granted summary judgment in favor of all the insurers, finding that they were entitled to judgment as a matter of law because appellants destroyed their subrogation rights by settling with the tortfeasor. Alternatively, the trial court found that appellants were not insureds under the policies issued by Continental and Havican to Mount Carmel Health because the Continental policy designated the members of the Congregation of the Sisters of the Holy Cross ("MCSHC") as named insureds in addition to numerous corporate named insureds. The trial court concluded that listing the Sisters of the Holy Cross in addition to the corporate named insureds removed the ambiguity present inScott-Pontzer surrounding the term "you," as it referred to insureds in the policy.
{¶ 8} On appeal, appellants have assigned the following as error:
I. The lower court committed reversible error in granting summary judgment in favor of Defendants Continental Insurance Company, Havican Insurance Company, American Casualty Company, and Valley Forge Insurance Company because defendants were not entitled to judgment as a matter of law and the case presented genuine issues of material fact which demand jury resolution.
II. The lower court committed reversible error in finding that the term "you" was not ambiguous on the basis that the policy designates the individual Members of the Congregation of the Sisters of the Holy Cross as named insureds in addition to the corporations Mount Carmel Health and Holy Cross Resources, Inc.
III. The lower court committed reversible error in finding that the notice and subrogation provisions contained in the liability portion of the policies applied to UM/UIM coverage that arises by operation of law.
IV. The lower court committed reversible error in finding that the notice and subrogation provisions contained in the liability portion of the policy were conditions precedent to the UM/UIM coverage provided by operation of law under the policies issued by Defendants Continental Insurance Company, Havican Insurance Company, American Casualty Insurance Company, and Valley Forge Insurance Company.
V. The lower court committed reversible error in finding that Plaintiffs' prior settlement with the tortfeasor extinguished Defendants [sic] subrogation rights such that Plaintiffs were precluded from UM/UIM coverage under the policies issued by Defendants Continental Insurance Company, Havican Insurance Company, American Casualty Company of Reading, PA, Continental Casualty Company, and Valley Forge Insurance Company.
{¶ 9} Appellate review of summary judgment motions is de novo.Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
{¶ 10} As a threshold matter, we first address the parties' choice of law arguments. Appellants contend that Ohio law applies because Continental and Havican chose to engage in the business of insurance in this state by insuring Joyce Mackie's employer, Mount Carmel Health, an Ohio corporation. In addition, appellants contend Ohio law applies because the Continental policy provides liability coverage for vehicles registered and principally garaged in Ohio, and the loss occurred in Ohio.
{¶ 11} On the other hand, appellees contend that Indiana law should apply because Holy Cross Shared Services was an Indiana corporation; the Continental and Havican policies were negotiated and entered into in Indiana; they were performed in Indiana; the insured's property was located primarily in Indiana, and the contracting parties did not intend to provide UM/UIM coverage in Ohio.
{¶ 12} In the case ofOhayon v. Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474, the court held that "[a]n action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions." Id. at paragraph one of the syllabus. The Ohio Supreme Court then stated that, absent an express choice of law provision, the court should consider the factors set forth in Restatement of Conflicts, Section 188, the contract choice of law factors, to make a determination with respect to which state's law applies. The court should determine which state has "the most significant relationship to the transaction and the parties." Id. at 477. To assist in this determination, the court should consider "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id.
{¶ 13} The court further found that coverage issues, like other contract issues, should be determined " `by the local law of the state which the parties understood was to be theprincipal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.' " (Emphasis sic.) Id. at 479, quoting Restatement of Conflicts, Section 193 at 610. "' [I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.' " Id. at 479-480, quoting Restatement of Conflicts at 611, Comment b. "The principal location of the insured risk described in Section 193 neatly corresponds with one of the Sections 188's enumerated factors — the location of the subject matter of the contract." (Emphasis sic.) Id. at 480.
{¶ 14} Cases decided afterOhayon in the context of UM/UIM claims tend to conclude that when the insurance policy covers vehicles that are principally garaged in Ohio, Ohio law generally will apply. See Ferris v. Rawn, Lawrence App. No. 02CA39, 2003-Ohio-4441, and cases cited therein. While no one factor is determinative, the location of the insured risk may weigh more heavily than other factors such as the place of contracting. Ferris, at ¶ 11.
{¶ 15} In applying Sections 188 and 193 of the Restatement to the facts of this case, we note that the Continental and Havican policies were negotiated and entered into in Indiana. However, with respect to Mount Carmel Health, a named insured, the policy provided coverage for vehicles registered and principally garaged in Ohio. Under the facts of the instant matter, we therefore conclude that Ohio has the most significant relationship to the transaction and the parties with respect to UM/UIM coverage for damages arising from the accident. Therefore, we conclude that Ohio law applies to the policy.
{¶ 16} We turn now to the question of whether appellants were "insureds" under the Continental and Havican policies. SeeScott-Pontzer, at 662 ("[I]f we find Pontzer was not an insured under the policies, then our inquiry is at an end"). In Scott-Pontzer, The Ohio Supreme Court held that where a commercial auto policy issued to a corporation defined the named insured as "you" and "[I]f you are an individual, any family member," the policy language was ambiguous and therefore was construed as extending insured status to the corporation's employees. Id. at 665. The court determined that it would be meaningless to limit protection solely to a corporate entity which cannot occupy or operate an automobile or suffer bodily injury or death. Id. at 664.
{¶ 17} In their second assignment of error, directed only to Joyce Mackie's insurers and not to John Mackie's insurers, the appellants argue they are insureds under the Continental and Havican policies because aScott-Pontzer ambiguity exists in the Continental policy. Appellants claim the UM endorsement attached to the Continental policy contains identical language to Scott-Pontzer and therefore they are insureds despite the MCSHC being listed as named insureds in addition to numerous corporate named insureds.
{¶ 18} Subsequent to the parties' briefs in this case, the Ohio Supreme Court decidedWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849. The second paragraph of the syllabus of the opinion states that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. (King v. Nationwide Ins. Co. [1988], 35 Ohio St.3d 208,519 N.E.2d 1380, applied; Scott-Pontzer v. Liberty Mut. Fire Ins. Co. [1999], 85 Ohio St.3d 660, 710 N.E.2d 1116, limited.)" Similarly, the third paragraph of the Westfield syllabus states that "[w]here a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured. (Ezawa v. Yasuda Fire Marine Ins. Co. of Am. [1999], 86 Ohio St.3d 557,715 N.E.2d 1142, overruled.)"
{¶ 19} Based on the Supreme Court's decision inWestfield, none of the plaintiffs are insureds under the Continental Business Auto Policy.
{¶ 20} We turn now to the Continental Commercial General Liability Policy ("CGLP"). The CGLP provides coverage in the amount of a $1 million personal injury limit and contains a nearly identical endorsement listing the named insured as the Continental Business Auto Policy. Like the business auto policy, the CGLP does not contain family member language. Appellants contend that the policy provides UM/UIM coverage by operation of law pursuant to R.C. 3917.18 and Selander, supra. In Selander, the Ohio Supreme Court determined that, where motor vehicle liability coverage is provided, even in a limited form, UM/UIM coverage must be provided. Id. at 544. The court stated that "[t]he fact that a policy provides liability coverage for non-owned and hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18 that a motor vehicle liability policy be delivered in this state with respect to any motor vehicle registered or principally garaged in this state." Id. at 544-545.
{¶ 21} Continental argues the policy provides only incidental coverage for use of an automobile and, therefore, pursuant toDavidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, the policy is not subject to R.C. 3937.18. Davidson involved an injured party who sought additional coverage from his homeowner's policy because it provided incidental coverage for certain vehicles. The Ohio Supreme Court held that "[a] homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirements of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage." Id. at syllabus.
{¶ 22} The Ohio Supreme Court went to some length to distinguish the differences betweenSelander and Davidson. Selander involved a general business liability policy that provided liability coverage for injuries arising out of the use of motor vehicles, and the insurer admitted that the policy provided limited automobile liability insurance for hired and nonowned vehicles. Selander, at 267. In contrast, the homeowner's policy in Davidson did not include coverage for liability arising out of the use of automobiles generally. Id. at 467.
{¶ 23} Here, the CGLP excludes coverage for bodily injury arising out of the use of autos. There is limited coverage for "parking an auto" and for operating "mobile equipment," defined as follows:
8. Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
b. Vehicles maintained for use solely on or next to premises you own or rent;
c. Vehicles that travel on crawler treads;
d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;
(1) Power cranes, shovels, loaders, diggers or drills; or
(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
(2) Cherry pickers and similar devices used to raise or lower workers;
f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.
However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
(1) Equipment designed primarily for
(a) Snow removal;
(b) Road maintenance, but not construction or resurfacing;
(c) Street cleaning;
(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
{¶ 24} Under Section II of the policy, "Who is an Insured," the policy provides in pertinent part as follows:
3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.
{¶ 25} InBurkhart v. CNA Ins. Co. (Feb. 25, 2002), Stark App. No. 2001CA00265, appeal allowed, 96 Ohio St.3d 1438, the Fifth Appellate District construed nearly identical language in a commercial general liability policy as providing coverage for a limited form of motor vehicles. The court concluded that Selander, not Davidson, applied, and accordingly the insurer was required to offer UM/UIM coverage in an amount equal to the liability limits. Since the insurer did not offer UM/UIM coverage with respect to the policy, the court determined that coverage arose by operation of law.
{¶ 26} The Fifth Circuit has recently retreated from this position inHeidt v. Federal Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785, and Fish v. The Ohio Cas. Ins. Co., Stark App. No. 2003CA00036, 2003-Ohio-4381. We agree with the reasoning of the Fifth Circuit in those more recent cases and conclude that the inclusion of parking and mobile equipment provisions in the policy does not transform the CGLP into a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage even though the policy pre-dates the H.B. No. 21 version of R.C. 3937.18.
{¶ 27} Turning to the Continental Multi-Cover Catastrophe Liability Policy and Havican Excess Liability Policy, we note that the Continental policy provides excess coverage for liability arising out of the use of an automobile. The Continental policy states in pertinent part:
 Coverage B I. Insuring Agreement
The Company will pay on behalf of the "insured" the "ultimate net loss", in excess of the applicable underlying limit or Self-Insured Retention, which the "insured" is legally obligated to pay by reason of liability imposed by law, or assumed under contract, for damages on account of:
a. "bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading or unloading" of any "aircraft", watercraft or "automobile[.]"
{¶ 28} Both the Continental Business Auto Policy and the Continental Commercial General Liability Policy are listed as underlying policies to this excess policy. The Havican policy provides automobile liability coverage to the extent it is provided by the underlying insurance. The Continental Multi-Cover Catastrophe Liability Policy is the underlying policy to the Havican policy.
{¶ 29} Joyce Mackie is not an insured under the Continental Multi-Cover Catastrophe Liability Policy. According to the terms of that policy, if the named insured is a corporation, the insured includes the corporation, as well as, among others, its executive officers acting within the scope of their duties for the insured corporation. Joyce Mackie is not an insured under the terms employed in the policy, as she is not an executive officer. Moreover, pursuant toWestfield, she is not an insured under a Scott-Pontzer analysis because she did not sustain the loss within the course and scope of her employment.
{¶ 30} Lastly, Joyce Mackie is not an insured under the Havican Insurance Policy because, by its terms, an insured is one who qualifies as an insured under the terms of the underlying policy. Because Joyce Mackie is not an insured under the Continental Multi-Cover Catastrophe Liability Policy, she is not an insured under the Havican Policy. Accordingly, appellants' second assignment of error is overruled. Since Joyce Mackie is not an insured under the four noted policies, the notice and subrogation issues pertaining to those policies are irrelevant, rendering moot plaintiffs' third, fourth, and fifth assignments of error as they apply to Joyce Mackie.
{¶ 31} We now turn our attention to the policies issued by John A. Mackie's employer: (1) the American Casualty Company of Reading, PA Business Auto Policy ("American Casualty Business Auto Policy"), with UM/UIM limits of $1 million; (2) the Valley Forge Insurance Company Commercial General Liability Policy with liability limits of $1 million ("Valley Forge CGLP"); and (3) the Continental Casualty Company Commercial Umbrella Policy ("Continental Umbrella Policy") with a liability limit of $2 million.
{¶ 32} With respect to the American Casualty Business Auto Policy, the policy contains an Ohio Uninsured Motorist endorsement that contains the same language the Ohio Supreme Court found ambiguous inScott-Pontzer. Pursuant to Westfield, John Mackie is not an insured because he did not sustain the loss within the course and scope of his employment. Moreover, the Westfield decision renders moot the notice and subrogation issues raised in plaintiffs' third, fourth and fifth assignments of error.
{¶ 33} The Valley Forge Commercial General Liability Policy contains the same liability coverage for the parking of an automobile and certain types of mobile equipment as the Continental CGLP discussed above. For the same reasons, we conclude that the Valley Forge CGLP is not a motor vehicle policy requiring the insurer to offer UM/UIM coverage.
{¶ 34} Next we examine the Continental Umbrella Policy. A representative of MP Construction Company, Inc., signed a written rejection form of UM/UIM coverage. However, he did not sign the form until August 6, 1991 on a policy with an inception date of January 1, 1991, and no premium charge was shown for the rejected coverage. UnderGyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565 and Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445, UM/UIM coverage therefore arises by operation of law. The Continental Umbrella Policy, however, restricts coverage to employees acting within the scope of their employment. The limitations Westfield imposed on Scott-Pontzer render plaintiffs not insured under the umbrella policy.
{¶ 35} For the foregoing reasons, we overrule plaintiffs' first and second assignments of error, rendering moot the third, fourth and fifth assignments of error. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.